UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| KATHERINE JANET HARRIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:06CV463 CDP |
| ) | |
| R. JAMES NICHOLSON, ) | |
| ) | |
| Defendant. ) | |

# **MEMORANDUM AND ORDER**

This employment discrimination case is before me on defendant's motion for summary judgment. Plaintiff Katherine Janet Harris works at the VA medical center as an instrument technician. She claims that her supervisor treated her differently from other employees because of her age, race, and sex, and that she was retaliated against for complaining of discrimination. Harris also alleges that she was subjected to harassment and a hostile work environment, and that her supervisor violated her privacy rights.

Harris filed a complaint of employment discrimination with the VA Office of Employment Discrimination Complaint Adjudication on April 13, 2004, and that office found against her. She appealed to the U.S. Equal Employment Opportunity Commission and the EEOC affirmed the adverse decision. Harris filed this case in March of 2006. In September of 2006, Harris filed an action in

Missouri Small Claims Court against her supervisor, Kenny Wilkes, seeking damages for an alleged disclosure of personal information. That claim was removed to this court, the actions were consolidated, and Secretary Nicholson replaced Wilkes as the proper defendant.

Defendant supported its motion for summary judgment with affidavits and evidence, as well as with the record of the agency administrative proceedings. Harris responded by arguing that she could prove her claims, and she ultimately presented a large volume of records from the VA, including the record of the agency consideration of her claim, but she has not presented any new affidavits or other evidence. Part of the evidence submitted by both parties was Harris's affidavit submitted during the VA administrative process, and so I have considered that evidence as her testimony here, and I have assumed that her testimony and the other evidence supporting her claim is true, where it is admissible. I have not credited, however, the many portions of the record that are inadmissible hearsay or speculation.

Even if I give Harris the benefit of all inferences, she still has failed to show that there is any evidence from which a trier of fact could find in her favor. There is no genuine dispute of material fact that would allow any of her claims to go to a jury, and so I will enter summary judgment in defendant's favor.

**Facts**

Harris' complaint alleges that between January 12 and April 8, 2004, her supervisor, Kenny Wilkes, frequently accused her of leaving early, checked on her whereabouts, questioned co-workers about her whereabouts, charged and threatened her with being listed as Absent Without Leave, disclosed private information to co-workers, called her physicians, accused her of not turning in medical statements, and gave her an unfair schedule.

The undisputed evidence shows that Harris has a long history of absenteeism. In one approximately six-week period, from February 2, 2003 through March 13, 2003, Harris took over 52 hours of leave. In another similar period, from May 16, 2003 through June 25, 2003, Harris used almost 70 hours of leave, including 33 hours AWOL. Between July 1, 2003 and September 26, 2003, Harris used over 54 hours of leave. Harris missed over 60 hours of work in the two months between October 9, 2003 and December 14, 2003. Between January 15, 2004, and the filing of her complaint in April of that year, Harris missed 92 hours of work. From April to June she missed another 56 hours. Harris testified that she had doctors' excuses for some of these absences, and that some of the absences were incorrectly listed as AWOL when they were, in fact, excused. Thus, although it is undisputed that she had many, many absences, whether at least

3

some of them were excused is a disputed fact.

Under VA procedures, when an employee is given warnings regarding an issue such as excessive absenteeism, written documents are provided. Wilkes provided Harris with multiple written documents listing specific dates and times when Harris had been absent. Harris wrote notes on some of the documents, indicating her disagreement with the contents. She does not dispute that during the period she was missing all this work, she was also receiving multiple warnings that she could be disciplined for doing so. Ultimately, she was given a written reprimand, but only after the VA determined that she had provided a falsified document purporting to be from her doctor.

Harris had been placed on "Medical Certification" in October of 2003. When an employee is on this status she is required to provide a signed doctor's statement for any missed work, and the statement is required to have specific information. If the employee fails to provide the required evidence, the sick leave is disapproved and she is charged AWOL.

On November 24, 2003, Harris did not report for duty; sick leave was tentatively approved for that day. In December of 2003, Harris provided a note on a doctor's prescription form indicating she had an office visit on November 24. Wilkes was suspicious of the note because some of the handwriting did not match,

so he contacted the doctor's office, who told him, both orally and in writing, that the note was a forgery and that Harris had not been to see the doctor on that date. Harris testified that she in fact did go to the doctor's office that day, although she did not see the doctor, and that someone at the doctor's office gave her the note. This is the only document purporting to come from a medical provider in the entire record.

Harris is female, African-American, and was 42 years old at the time of these events. She testified that Wilkes is the only person who discriminated against her. Wilkes is an African-American male. Four medical technicians other than Harris work under Wilkes: three African-American females, ages 53, 48 and 41 at the time, and one African-American male, aged 52 at the time. Harris also asks the court to compare her treatment to that of certain nurses who worked on the floor, some of whom she says were white and younger.

In her affidavit, Harris testified that Wilkes treated her "like he doesn't like black females" and that he directed his actions towards "mainly . . . black females." Harris also alleged she "has heard that he [Wilkes] has written up some other black females and nurses some bad write-ups to the point of how they might lose their jobs and stuff like that. They are also black females over 40." Harris alleged that Wilkes treated the younger nurses "nothing like he is doing me."

Harris stated "I don't see it going on with any of the younger nurses." She specifically referred to younger nurses named Micaya and Cheryl. Additionally, Harris alleged that Wilkes doesn't "treat white nurses the way he treats me." Harris also alleged that "no one is receiving [write-ups] constantly like this," that she was denied the opportunity to work the night tour, and that Wilkes has not called the physicians of other employees to verify the genuineness of the medical excuses they provide.

Other employees testified that Wilkes frequently questioned them about Harris' whereabouts. One witness said Wilkes asked about whoever was supposed to be on the telemetry machine if he saw it unattended, but two others testified that Wilkes asked about Harris and questioned her whereabouts far more than he did that of the other instrument technicians. When asked why she believed her age, race and sex were motivating factors in Wilkes' actions, Harris repeatedly testified it was because "that describes me" and "it is directed at me."

## **Discussion**

In considering a motion for summary judgment, the court must view the facts and inferences from the facts in the light most favorable to the non-moving party. Matsushita Elec. Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). As the moving party, defendant must establish that there is no

6

genuine issue of material fact and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is "material" if it might affect the outcome of the case, and a factual dispute is "genuine" if a reasonable jury could return a verdict for the non-moving party based on the evidence. Anderson, 477 U.S. at 248. The defendant may discharge his burden by pointing out to the court that there is an absence of evidence to support the plaintiff's case. Celotex, 477 U.S. at 327. Once defendant has met this burden, the burden shifts to the plaintiff to provide evidence demonstrating that a genuine issue of material fact exists. Matsushita, 475 U.S. at 586-87. To show this, the plaintiff cannot rest on the allegations in her pleadings but, by affidavit or other evidence, must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e). The court considers only admissible evidence and disregards portions of affidavits and depositions that were made without personal knowledge, consisted of hearsay, or purported to state legal conclusions as fact. See Murphy v. Mo. Dep't of Corr., 372 F.3d 979, 982 (8th Cir. 2004); Shaver v. Indep. Stave Co., 350 F.3d 716, 723 (8th Cir. 2003).

## Disparate Treatment

Title VII prohibits employment discrimination on the basis of race or sex.

42 U.S.C. 2000e. et seq. The Age Discrimination in Employment Act of 1967 ("ADEA") prohibits discrimination on the basis of age against persons over 40. 29 U.S.C. 633a. The McDonnell Douglas burden-shifting doctrine applies to Harris' claims of age, race and sex discrimination. See McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); O'Connor v. Consolidated Coin Caterers Corp., 517 U.S. 308 (1996). Harris bears the burden of establishing a prima facie case by showing: (1) she is a member of a protected class; (2) she was qualified to perform her job; (3) there was an adverse action taken against her; and (4) she was treated differently from similarly situated employees outside of her protected class. McDonnell Douglas, 411 U.S. at 802; see also Hesse v. Avis Rent-A-Car Sys., Inc., 394 F.3d 624, 631 (8th Cir. 2005). It is "a plaintiff's burden to produce specific, tangible evidence showing a disparity in the treatment of similarly situated employees." Logan v. Liberty Healthcare Corp., 416 F. 3d 877, 882 (8th Cir. 2005) (internal quotations omitted).

If Harris establishes a prima facie case, there is a presumption of discrimination, and the burden of proof shifts to the VA. See McDonnell Douglas, 411 U.S. at 802-03. Once the burden shifts to the defendant, it must show that it had legitimate, non-discriminatory reasons for its actions. Id. If defendant succeeds, then the burden shifts back to Harris to show that the reasons proffered

by the employer are a pretext for discrimination. See McDonnell Douglas, 411 U.S. at 803-04. Harris may show pretext with evidence that a discriminatory reason more likely than not motivated management, that management's articulated reasons are not worthy of belief, or that management has a history of disfavoring Harris' protected class or reacting improperly to legitimate protected civil rights activities. See McDonnell Douglas, 411 U.S. at 804-05.

Harris cannot make out a prima facie case of disparate treatment because she has failed to present any evidence that any similarly situated people were treated differently. She has presented no evidence that would show that any others had similar patterns of absences. Additionally, of course, most of the people with whom she worked were also in the same protected classes as she was. Even if I compare her treatment to that of the younger, white nurses, she fails to make a prima facie case because she has not shown that any of them had absence issues.

Most of Harris' allegations are "skeletal allegations, unsupported with specific facts or evidence" and are "insufficient to create a genuine issue of material fact so as to preclude summary judgment." Thomas v. Corwin, 483 F.3d 516, 530 (8th Cir. 2007). It is not enough for Harris to assert that she is a member of a protected class and that she has been discriminated against because "it describes me." That does not establish differential treatment.

9

Even if I assume that Harris has made out a prima facie case, she still would not prevail because the VA has shown it had legitimate non-discriminatory reasons for its actions, and Harris has no evidence of pretext. Once the VA presents evidence of legitimate, non-discriminatory reasons for its actions, the "legally mandatory inference of discrimination arising from the plaintiff's initial evidence" is "dropped from the case." Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 255 n. 10 (1981). "The McDonnell Douglas framework – with its presumptions and burdens – is no longer relevant" once VA offers such evidence. St. Mary's Honor Center v. Hicks, 509 U.S. 502, 510 (1993). Going forward, the complainant must provide "more substantial evidence of discrimination" to prove pretext, "because evidence of pretext is viewed in the light of [the employer]'s legitimate, non-discriminatory explanation." Jones v. United Parcel Serv., Inc., 461 F.3d 982, 992 (8th Cir. 2006) (citing Sprenger v. Fed. Home Loan Bank, 253 F.3d 1106, 1111 (8th Cir. 2001)).

Excessive absenteeism and failure to furnish medical documentation to support sick leave are legitimate, non-discriminatory reasons for adverse employment actions. See Fuller v. Alliant Energy Corp. Services, Inc., 456 F. Supp 2d 1044, 1070 (N.D. Iowa 2006). Additionally, falsification of a document is a legitimate, non-discriminatory reason for an adverse employment action. Lowe v.

J.B. Hunt Transport, Inc., 963 F.2d 173, 175 (8th Cir. 1992). Although Harris denies falsifying the document, the VA had ample evidence to believe that she had done so, and her denial, in the face of credible, third-party evidence received at the time by the employer, is not sufficient to create a genuine dispute of fact regarding the legitimacy of the VA's reasons for taking adverse action.

Harris has shown nothing from which one could infer "that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." Burdine, 450 U.S. at 253. A reason cannot be proved to be a pretext for discrimination unless it is shown both that the reason was false, and that discrimination was the real reason. Hicks, 509 U.S. at 515. Even if "the employer's proffered reason is unpersuasive, or even obviously contrived, [that] does not necessarily establish that the plaintiff's proffered reason ... is correct." Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 146-47 (2000).

Here the reason is neither unpersuasive nor obviously contrived – it is in fact persuasive and supported by independent evidence, unlike plaintiff's denials. Harris has not provided any basis from which anyone could conclude that the VA's stated reasons are pretext for discrimination. She has done no more than make conclusory allegations that discrimination must be the reason because she believes it to be so. This is not sufficient to withstand summary judgment.

## Harris' Reprisal Claim

The McDonnell Douglas burden-shifting doctrine governs Harris' reprisal claims as well. In order to establish a claim of retaliation, Harris must show: "(1) she engaged in protected activity; (2) a reasonable person would have found the challenged action materially adverse and (3) the materially adverse action was causally linked to the protected conduct." Carrington v. City of Des Moines, 481 F. 3d 1046, 1050 (8th Cir. 2007).

Harris did not provide any details regarding her alleged protected activity. She suggests that the protected activity includes some unspecified union activity from sometime in 2003 as well as her current EEOC complaint filed in April 2004. Since Harris cannot specify at what time during 2003 she engaged in her union activity nor can she articulate any specific details about the nature of that activity, she cannot make out a reprisal claim with regard to any union activity.

Filing an EEOC complaint is a protected activity. However, Harris has not shown any causal link between filing the EEOC complaint and the actions taken against her. Most of the VA actions that are the basis of Harris' reprisal allegations occurred before she filed the EEOC complaint in April of 2004. "Complaining of discrimination in response to a charge of workplace misconduct is an abuse of the anti-retaliation remedy." See Griffith v. City of Des Moines, 387

F.3d 733, 738 (8th Cir. 2004). Harris has not specified if or how the VA's actions continued after she filed her complaint. While Harris was continued on medical certification in July of 2004, this action is consistent with the VA's actions before Harris filed her complaint. Defendant's motion for summary judgment on the reprisal claim is granted.

### Harris' Harassment/ Hostile Environment Claims

To establish a prima facie case of hostile work environment or discriminatory harassment on the basis of age, race or sex, Harris must demonstrate: "(1) that she was a member of a protected group; (2) the occurrence of unwelcome harassment; (3) a causal nexus between the harassment and her membership in the protected group; (4) that the harassment affected a term, condition, or privilege of employment; and (5) that her employer knew or should have known of the harassment and failed to take prompt and effective remedial action." Anda v. Wickes Furniture Co., 517 F.3d 526, 531 (8th Cir. 2008); Austin v. Minn. Mining & Mfg. Co., 193 F.3d 992, 994 (8th Cir. 1999). "The conduct must have been severe or pervasive enough to create an objectively hostile or abusive work environment." Hesse, 394 F.3d at 629 (citing Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)). "Hostile work environment claims are limited in nature, requiring a high evidentiary showing that the plaintiff's workplace is

13

permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Anda, 517 F.3d at 531. In assessing whether alleged conduct is severe or pervasive enough to make out a hostile work environment or harassment claim, "courts should consider the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Johnson v. Missouri Goodwill Industries, 96 F. Supp.2d 926, 932 (E.D. Mo. 2000).

I am assuming that the basis of Harris' claims of harassment and hostile work environment are the same allegations that support her disparate treatment. Again, Harris has shown nothing more than, at most, that her supervisor treated her harshly. She has shown nothing that would link this treatment to her race, age, or sex. Additionally, the treatment she complains of is simply not severe enough or sufficiently pervasive to support a harassment or hostile work environment claim. "Isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." Hesse, 394 F. 3d at 630. Defendant's motion for summary judgment on the harassment and hostile work environment claims is granted.

## Harris' Privacy Claim

Harris alleged that February 24, 2004, Wilkes told her she was on medical certification and threatened her with AWOL in front of several co-workers. Additionally, Harris alleged that Wilkes disclosed Harris's information regarding her use of leave to a co-worker whose job included creating the work schedules for the unit, that Wilkes called her physicians to verify the legitimacy of her absences, and that Wilkes left her records on her desk, which made them accessible to others. Harris has not alleged whether her file was in a secure, non-public area, nor has she provided detail about the content of her records or whether Wilkes ever asked her physicians for information regarding her medical conditions. There is no evidence that her file was removed from Wilkes' desk or that anyone else had access to her personal information. There is no evidence that anyone other than Wilkes has had access to her personnel file and records.

Whatever the legal basis for this claim (which is not at all clear), summary judgment is appropriate. For any claim to succeed, Harris would have to show that her personal information was disclosed to someone. See Thomas v. Corwin, 483 F.3d at 532. She has presented no evidence of this, and defendant is entitled to summary judgment on this claim as well.

## **Conclusion**

Kathleen Harris believes her supervisor treated her too harshly when she had excessive absences. She has failed to present any evidence from which a fact-finder could conclude that any of this alleged harshness had anything to do with her race, sex, or age, or that it was taken in violation of any law. The undisputed evidence shows that there is no claim of any sort here, and defendant is entitled to summary judgment.

Accordingly,

**IT IS HEREBY ORDERED** that defendants' motion for summary judgment [#33] is granted.

A separate judgment in accordance with the Memorandum and Order is entered this same date.

*[signature]*
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 17th day of September, 2008.